UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

VIRTUAL ARCHITECTURE LTD.,

                      Plaintiff,

- against -

JAY H. RICK and RICK STEINER FELL & BENOWITZ LLP

                      Defendants.

-------------------------------------------------------------------x

PLAINTIFF DEMANDS A JURY TRIAL

**COMPLAINT**

Case No.  08 CV 5866 (SHS)

ECF Case

Plaintiff, by its attorneys Nicholas J. Damadeo, P.C., complaining of the defendants, alleges as follows upon information and belief:

**PRELIMINARY STATEMENT**

1. At all relevant times alleged herein, Plaintiff Virtual Architecture Ltd. (herein referred to as "Virtual") was a client of the defendants.

2. Defendant Jay H. Rick (herein referred to as "Rick") is an attorney duly licensed to practice law in the State of New York.

3. Rick is a limited liability partner in RSFB.

4. Defendant Rick Steiner Fell & Benowitz LLP (herein referred to as "RSFB") is a law firm.

5. Rick and RSFB hold themselves out to the general public as having expertise in the areas of banking and domestic and international trade financing.

6. Plaintiff brings this action for monetary damages caused by the defendants' professional malpractice, breach of contract, and fraud.

1

## JURISDICTION AND VENUE

7. This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because Virtual is a citizen or subject of a foreign state, the defendants are citizens of a State, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because at least one of the defendants resides in the Southern District of the State of New York.

## PARTIES

9. Plaintiff Virtual Architecture Ltd. (herein referred to as "Virtual") is a corporation incorporated under the laws of the British Virgin Islands and having its principal office at 192, Waterloo Street, #02-02 Skyline Building, Singapore 187966.

10. Rick is a resident of the State of New York.

11. RSFB is a limited liability partnership formed pursuant to the laws of the State of New York and having its principal office at 90 Broad St., New York, NY 10004.

## FACTS

12. On or about November 14, 2002, Virtual entered into a joint agreement with Global Funding Services Limited (hereinafter referred to as "Global"), a Belize corporation (hereinafter referred to as "the joint agreement").

13. Global maintained an office in the same building in which the defendants maintained their law office.

14. Global was owned by Hugh Silbert (hereinafter "Silbert").

15. Pursuant to the terms of the joint agreement, Rick agreed to act as Escrow Agent for the transaction contemplated in the joint agreement.

16. The transaction contemplated in the joint agreement was a certain Investment Program.

17. Pursuant to the joint agreement, the Investment Program was "a secured Investment Program (Transaction) for a Dollar amount no less than the sum of Seventy Million Dollars U.S. ($75,000,000.00) [*sic*] with the option of rollovers and extensions."

18. The Investment Program was in fact an illegal and fraudulent transaction commonly known as a "Prime Bank Investment Scheme" or "High Yield Investment Scheme".

19. Silbert had a prior history of involvement in the promotion of Prime Bank / High Yield Investment Schemes.

20. Pursuant to the terms of the joint agreement, Virtual and Rick entered into a separate Escrow Agreement dated November 17, 2002 (hereinafter "the Escrow Agreement").

21. Pursuant to the terms of the Escrow Agreement, Rick was the Escrow Agent thereunder.

22. Rick was at all times acting within the scope of his authority as a limited liability partner in RSFB.

23. Pursuant to the terms of the Escrow Agreement, the Escrow Agent was required to act in a manner consistent with the duties and obligations of the Escrow Agent as set forth in the joint agreement.

24. Pursuant to the terms of the Escrow Agreement, Virtual agreed to deposit with the Escrow Agent the sum of Five Million Two Hundred Fifty Thousand ($5,250,000.00) Dollars (hereinafter referred to as "the Escrow Deposit").

25. Pursuant to the terms of the joint agreement, $50,000.00 of the Escrow Deposit was a retainer to the defendants for attorney fees to act as the Escrow Agent, to contract the Funding, and to contract the Investment Program.

26. Pursuant to the terms of the joint agreement, $5,200,000.00 of the Escrow Deposit was to remain in escrow with the Escrow Agent "to evidence costs segregated to obtain the Funding to placed for investment."

27. Pursuant to the terms of the joint agreement, "the Escrow Sum will always remain in the control of the Escrow Agent until released" for Funding costs of the investment "or recalled by Virtual".

28. Pursuant to the terms of the Escrow Agreement, the Escrow Agent agreed not to disburse the Escrow Deposit except on the written instructions of Stanley Wayland as the authorized representative of Virtual.

29. The defendants maintained one or more escrow accounts with Bank Hofmann in Switzerland.

30. Pursuant to instructions from the defendants, on or about November 29, 2002, Virtual deposited the Escrow Deposit into the defendants' account with Bank Hofmann under subaccount 17,478.

31. Pursuant to the terms of the joint agreement, the Investment Program was only to buy and sell bank financial instruments.

4

32. As of March, 2003, One Million ($1,000,000.00) Dollars of the Escrow Deposit had been returned to Virtual.

33. As of March, 2003, Four Million Two Hundred Thousand ($4,200,000.00) Dollars of the Escrow Deposit had not been returned to Virtual.

34. In or about December, 2002, without Virtual's knowledge and consent, defendants transferred approximately Four Million Two Hundred Thousand ($4,200,000.00) Dollars of the Escrow Deposit to a brokerage house in the United Kingdom.

35. Said transfer was not used to buy and sell bank instruments.

36. In or about March, 2003, defendants requested authorization from Virtual to transfer said sum of Four Million Two Hundred Thousand ($4,200,000.00) Dollars of the Escrow Deposit to said brokerage house.

37. At the time of said request, Virtual was not aware that defendants had already made said transfer prior to the request.

38. Subsequent to March, 2003, Virtual learned that the said transfer had been made prior to the request.

39. Subsequent to March, 2003, Virtual learned that the brokerage house was Pritchard's.

40. Subsequent to March, 2003, Virtual learned that its funds had not been invested in the purchase and sale of bank instruments.

41. Subsequent to March, 2003, Virtual was informed that Pritchard's did not receive any of Virtual's Escrow Deposit from the defendant.

42. Defendants have failed to account to Virtual for the whereabouts of the balance of the Escrow Deposit.

43. Subsequent to March, 2003, Virtual demanded of defendants the return of said sum of Four Million Two Hundred Thousand ($4,200,000.00) Dollars, no part of which has been paid to Virtual.

44. Thereafter, through at least December, 2005, defendants undertook to represent Virtual in an effort to recover said sum from Pritchard's.

## COUNT ONE

### (Legal Malpractice)

45. Pursuant to the terms of the joint agreement and the Escrow Agreement, defendants agreed to render legal services to Virtual in establishing the Swiss Bank account, contracting the Funding, and contracting the Investment Program.

46. Defendants knew or should have known that the Investment Program was an illegal, unlawful, and non-existent "Prime Bank / High Yield Investment Scheme".

47. Defendants failed to advise Virtual that the Investment Program was an illegal, unlawful, and non-existent "Prime Bank / High Yield Investment Scheme".

48. Defendants failed to advise Virtual not to invest in the Investment Program.

49. But for defendants failure to so advise Virtual, Virtual would not have participated in the Investment Program.

50. Defendants failed to exercise the degree of care, skill and diligence commonly possessed by a member of the legal profession.

51. As a result of the foregoing, Virtual has sustained monetary damages.

## COUNT TWO

### (Legal Malpractice)

52. Pursuant to the terms of the joint agreement and the Escrow Agreement, defendants agreed not to disburse the Escrow Deposit without the written consent of Virtual.

53. Pursuant to the terms of the joint agreement and the Escrow Agreement, defendants agreed not to disburse the Escrow Deposit except for the Investment Program.

54. Defendants disbursed approximately Four Million Two Hundred Thousand ($4,200,000.00) Dollars of the Escrow Deposit without Virtual's written authorization.

55. Defendants disbursed approximately Four Million Two Hundred Thousand ($4,200,000.00) Dollars of the Escrow Deposit for investment in other than bank instruments as required by the Investment Program.

56. Defendants failed to exercise the degree of care, skill and diligence commonly possessed by a member of the legal profession.

57. As a result of the foregoing, Virtual has sustained monetary damages.

## COUNT THREE

### (Negligence)

58. Pursuant to the terms of the joint agreement and the Escrow Agreement, defendants owed a duty to Virtual not to disburse the Escrow Deposit without the written consent of Virtual.

59. Pursuant to the terms of the joint agreement and the Escrow Agreement, defendants owed a duty to Virtual not to disburse the Escrow Deposit except for the Investment Program.

60. Defendants breached their duty by disbursing approximately Four Million Two Hundred Thousand ($4,200,000.00) Dollars of the Escrow Deposit without Virtual's written authorization.

61. Defendants breached their duty by disbursing approximately Four Million Two Hundred Thousand ($4,200,000.00) Dollars of the Escrow Deposit for investment in other than bank instruments as required by the Investment Program.

62. As a result of the foregoing, Virtual has sustained monetary damages.

## COUNT FOUR

### (Fraud)

63. At the time defendants requested Virtual's authorization to transfer approximately Four Million Two Hundred Thousand ($4,200,000.00) Dollars of the Escrow Deposit to Pritchard's, defendants represented to Virtual that said transfer had not already been made.

64. Said representation was false when made.

65. Defendant knew said representation was false when made.

66. Defendant made said representation to induce Virtual to act upon it.

67. Virtual acted upon said representation to its detriment.

68. Defendants represented to Virtual that said transfer would be made for Virtual's benefit to Fund the Investment Program.

69. Said representation was false when made.

70. Said transfer in fact was made months earlier as part of an investment on behalf of clients of Global and defendants other than Virtual.

71. Defendant knew said representation was false when made.

72. Defendant made said representation to induce Virtual to act upon it.

73. Virtual acted upon said representation to its detriment.

74. As a result of the foregoing, Virtual has sustained monetary damages.

## COUNT FIVE

### (Breach of Contract)

75. Pursuant to the terms of the joint agreement and the Escrow Agreement, defendants agreed not to disburse the Escrow Deposit without the written consent of Virtual.

76. Pursuant to the terms of the joint agreement and the Escrow Agreement, defendants agreed not to disburse the Escrow Deposit except for the Investment Program.

77. Defendants disbursed approximately Four Million Two Hundred Thousand ($4,200,000.00) Dollars of the Escrow Deposit without Virtual's written authorization.

78. Defendants disbursed approximately Four Million Two Hundred Thousand ($4,200,000.00) Dollars of the Escrow Deposit for investment in other than bank instruments as required by the Investment Program.

79. As a result of the foregoing, defendants breached their contract with Virtual.

80. As a result of the foregoing, Virtual has sustained monetary damages.

WHEREFORE, plaintiff demands judgment against defendants in the amount of Four Million Two Hundred Thousand ($4,200,000.00) Dollars, together with interest from March 1, 2003, punitive damages on Count Four in the amount of Five Million ($5,000,000.00) Dollars, together with reasonable attorney's fees, costs and disbursements.

Dated: June 27, 2008

>*/s/ Nicholas J. Damadeo*___
>Nicholas J. Damadeo (ND6752)
>NICHOLAS J. DAMADEO, P.C.
>Attorneys for Plaintiff
>27 West Neck Road
>Huntington, NY  11743
>(631) 271-7400